# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MATTHEW J. PLATKIN, Attorney
General of the STATE OF NEW
JERSEY, and ELIZABETH M.
HARRIS, Acting Director of the New
Jersey Division of Consumer Affairs,

    Plaintiffs,

      v.

SIG SAUER, INC.,

    Defendant.

CASE NO.: 2:25-cv-17797

---

## BRIEF IN SUPPORT OF DEFENDANT SIG SAUER INC.'S MOTION TO DISMISS AND TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT

Stephen J. DeFeo (ID No. 032071985)
**Brown & Connery, LLP**
360 North Haddon Avenue
Westmont, NJ 08108
P: (856) 858-8169
F: (856) 858-4967
sdefeo@brownconnery.com

Eric G. Lasker (*Pro Hac Vice Forthcoming*)
Robert E. Johnston (*Pro Hac Vice Forthcoming*)
Brett F. Clements (ID No. 068702013)
**Hollingsworth**LLP
1350 I Street NW
Washington, DC 20005
P: (202) 898-5800

F: (202) 682-1639
elasker@hollingsworthllp.com
rjohnston@hollingsworthllp.com
bclements@hollingsworthllp.com

*Attorneys for Defendant*
*Sig Sauer Inc.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... iii

I.    PRELIMINARY STATEMENT ............................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND.........................4

    A. Procedural Background......................................................4

    B. Plaintiffs' Allegations ....................................................5

III.  LEGAL STANDARD ...........................................................9

    A. Rule 12(b)(6) ..............................................................9

    B. Rule 12(f) ................................................................10

IV.   MOTION TO STRIKE........................................................11

    A. Plaintiffs' False Allegations Regarding the U.S. Army's
    Procurement of the P320 Should Be Stricken as Immaterial
    Because They Have No Bearing on Plaintiffs' Claims and Will
    Confuse the Issues..........................................................11

V.    MOTION TO DISMISS ......................................................16

    A. Plaintiffs' Public Nuisance Claims (Counts 1, 4, 5, 8, and 9) Must
    Be Dismissed Because They are Grounded in Product Liability and
    May Only Be Addressed Under the New Jersey Product Liability
    Act ..........................................................................16

    B. Plaintiffs' PLA Claims (Counts 2 and 3) Must be Dismissed
    Because Plaintiffs Lack Standing to Bring Them.........................22

C.  Plaintiffs' Design Defect PLA Claim (Count 2) Also Fails
    As a Matter of New Jersey Law Because Consumers Are Provided
    the Option of Purchasing P320 Handguns with the Manual Thumb
    Safety that Plaintiffs Allege Cures the Claimed Product Defect ... 24

D.  Plaintiffs' Claims Under the New Jersey Consumer Fraud Act
    (Counts 6 and 7) Fail for Multiple Reasons ................................... 27

    1.  The Allegedly Deceptive Statements Plaintiffs Reference are
        Mere "Puffery" or Are Accurate, Neither of Which Supports
        a CFA Claim Under New Jersey Law ................................. 28

    2.  Plaintiffs' CFA Claims Must Be Dismissed Because They
        Are Subsumed by the PLA .................................................. 30

E.  Plaintiffs' Punitive Damages Request Must Be Dismissed Because
    Plaintiffs Have Failed to State a Claim Entitling Them to
    Compensatory Damages and Because Their Allegations Are
    Devoid of the Requisite Supporting Facts ...................................... 33

F.  Plaintiffs Fail to Allege Facts Sufficient to Meet Their Burden
    Under *Bruen* to Support the Constitutionality of their Request for a
    Statewide Ban and Mandatory Recall of All P320 Handguns ....... 35

CONCLUSION ..................................................................................... 40

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adamson v. Ortho-McNeil Pharm., Inc.*,
463 F. Supp. 2d 496 (D.N.J. 2006) ............................................................29

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
458 U.S. 592 (1982) ...................................................................................23

*Am. Int'l Adjustment Co. v. Galvin*,
86 F.3d 1455 (7th Cir.1996) .......................................................................13

*Argabright v. Rheem Mfg. Co.*,
201 F. Supp. 3d 578 (D.N.J. 2016) .......................................................28, 29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2008) ..............................................................................10, 35

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Platkin*,
742 F. Supp. 3d 421 (D.N.J. 2024) .......................................................36, 37

*Barrett v. Tri-Coast Pharmacy, Inc.*,
518 F. Supp. 3d 810 (D.N.J. 2021) .......................................................31, 32

*Bedwell v. Braztech Int'l, L.C.*,
No. 17-CIV-22335, 2018 WL 830073 (S.D. Fla. Feb. 9, 2018)..............................39

*Bell Atl. Corp. v. Twombly*,
550 U.S. 555 (2007)......................................................................10, 34, 36, 40

*Boland v. Bonta*,
662 F. Supp. 3d 1077 (C.D. Cal. 2023) .....................................................38

*Bristol-Myers Squibb Co. v. IVAX Corp.*,
77 F. Supp. 2d 606 (D.N.J. 2000) .......................................................11, 16

*Broselow v. Fisher*,
319 F.3d 605 (3d Cir. 2003) ..................................................................................23

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
273 F.3d 536 (3rd Cir. 2001) ...........................................................................19, 21

*City of Philadelphia v. Beretta U.S.A. Corp.*,
277 F.3d 415 (3rd Cir. 2002) .................................................................................20

*Copeland v. Poliquin Performance Center 2, LLC*,
Case No. 3:19-cv-20278, 2021 WL 1207728 (D.N.J. Mar. 30, 2021) ....................32

*Davis v. Sig Sauer, Inc.*,
126 F.4th 1213 (6th Cir. 2025) ................................................................................2

*Del. Health Care, Inc. v. MCD Holding Co.*,
893 F. Supp. 1279 (D. Del. 1995)......................................................................10, 12

*District of Columbia v. Heller*,
554 U.S. 570 (2008)...............................................................................4, 36, 39

*Doe v. N. Reg'l Police Dep't of Allegheny Cnty.*,
No. 24-2481, 2025 WL 1950065 (3d Cir. July 16, 2025) ....................10, 34, 36, 40

*Dorley v. S. Fayette Twp. Sch. Dist.*,
129 F. Supp. 3d 220 (W.D. Pa. 2015)....................................................................13

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) .................................................................................37

*Garlanger v. Verbeke*,
223 F. Supp. 2d 596 (D.N.J. 2002) ........................................................................10

*Gillman v. Rakouskas*,
No. CV 16-4619, 2017 WL 379433 (D.N.J. Jan. 26, 2017) .............................34, 35

*Gonzalez v. Apple Inc*,
No. 22-2617, 2022 WL 16922178 (D.N.J. Nov. 14, 2022)........................17, 22, 30

iv

*Gordon v. Sig Sauer, Inc.*
No. H-19-585, 2019 WL 4572799 (S.D. Tex. Sept. 20, 2019)................................29

*Hawaii v. Standard Oil Co. of Cal.*,
405 U.S. 251 (1972)..............................................................................24

*Herman v. Sig Sauer Inc.*,
No. 23-6136, 2025 WL 1672350 (10th Cir. June 13, 2025)......................................1

*Higgins v. Route 17 Auto., LLC*,
No. CIV.A. 11-6240, 2012 WL 3284846 (D.N.J. Aug. 10, 2012) ..........................35

*Hindermyer v. B. Braun Med. Inc.*,
419 F. Supp. 3d 809 (D.N.J. 2019) .......................................................22, 27, 32, 33

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3rd Cir. 1997) .................................................................27

*Keene v. Sturm, Ruger & Co.*,
121 F. Supp. 2d 1063 (E.D. Tex. 2000)......................................................39

*Kehagias v. Glock, Inc.*,
No. 1:11CV1133, 2013 WL 3783744 (M.D.N.C. July 18, 2013) ..........................39

*Kohn, Savett, Klein & Graf, P.C. v. Cohen*,
No. CIV.A. 89-2173, 1990 WL 42244 (E.D. Pa. Apr. 10, 1990).............................7

*Luis v. United States*,
578 U.S. 5 (2016)................................................................................37

*LY Berditchev Corp. v. Truss Cosm. Corp.*,
No. 22-04242, 2023 WL 6307462 (D.N.J. Sep. 28, 2023)..........................10, 11, 15

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011)......................................................................9

*Mary Kay, Inc. v. Dunlap*,
No. 3:12-CV-0029-D, 2012 WL 2358082 (N.D. Tex. June 21, 2012)..................13

v

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ............................................................................................... Passim

*Najjar v. Salameh*,
787 F. Supp. 3d 8 (D.N.J. 2025) ........................................................................7, 27

*Northrop v. Sig Sauer, Inc.*,
406 So. 3d 193 (Fla. Dist. Ct. App. 2025) ...............................................................2

*Palatka v. Savage Arms, Inc.*,
535 F. App'x 448 (6th Cir. 2013) ...........................................................................39

*Peterson v. Goldin*,
747 F. Supp. 3d 714 (D.N.J. 2024) ..........................................................................9

*Qasim v. Spectrum Brands Holdings, Inc.*,
Civil Action No. 21-18744, 2024 WL 4345153 (D.N.J. Sept. 30, 2024)...............32

*Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*,
449 F. Supp. 3d 449 (D.N.J. 2020) .............................................................10, 11, 12

*Reese v. ATF*,
127 F.4th 583 (5th Cir. 2025) .................................................................................37

*Repola v. Morbark Indus., Inc.*,
934 F.2d 483 (3d Cir. 1991)....................................................................................17

*Rigby v. Jennings*,
630 F. Supp 3d 602 (D. Del. 2022)..........................................................................37

*Schraeder v. Demilec (USA) LLC*,
No. CIV. 12-6074 FSH, 2013 WL 3654093 (D.N.J. July 12, 2013)......................31

*Seguin v. Remington Arms Co.*,
31 F.4th 311 (5th Cir. 2022) ...................................................................................39

*Slatowski v. Sig Sauer, Inc.*,
148 F.4th 132 (3d Cir. 2025) ....................................................................................1

*Spanish Sports Network, LLC v. Spanish Football Prods., LLC,*
No. 20-7354, 2021 WL 2284260 (D.N.J. June 4, 2021)....................................10, 12

*Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.,*
984 F.2d 915 (8th Cir.1993) ...............................................................................2, 17

*Tosseth v. Remington Arms Co.,*
483 F. Supp. 3d 659 (D.N.D. 2020)..........................................................................39

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp.,*
252 F. App'x 123 (9th Cir. 2007) .............................................................................14

*Turner v. N.J. State Police,*
No. 08-5163, 2014 WL 6991892 (D.N.J. Dec. 5, 2014) ...........................................11

*Vicente v. DePuy Synthes Co.,*
570 F. Supp. 3d 232 (D.N.J. 2021) ...........................................................................27

## STATE CASES

*Berkoski v. Honda Motor Co.,*
328 A.3d 986 (N.J. Super. Ct. App. Div. 2025) .......................................3, 25, 26, 27

*In re Lead Paint Litig.,*
924 A.2d 484 (N.J. 2007)................................................................................ Passim

*In re Proceed Mesh Litig. (Proceed Surgical Mesh),*
Master Docket No. ATL-L-000794-19 (N.J. Super. Ct. Law Div. Mar. 12, 2019) 19

*In re Singulair Litig.,*
Master Docket No. ATL-L-000481-22 (N.J. Super. Ct. Law Div. Jan. 4, 2022)....19

*In re Stryker Rejuvenate & ABG II Modular Hip Implant Litig.,*
Master Docket No. BER-L-000936-13 (N.J. Super. Ct. Law Div. Feb. 6, 2013)...19

*N.J. Citizen Action v. Schering-Plough Corp.,*
842 A.2d 174 (App. Div. 2003) ................................................................................28

*N.J. Dep't of Env't Prot. v. Hess Corp.*,
No. A-2893-18T2, 2020 WL 1683180 (N.J. Super. Ct. App. Div. Apr. 7, 2020)...22

*Pavlova v. Mint Mgmt. Corp.*,
868 A.2d 322 (N.J. Super. Ct. App. Div. 2005) .......................................34

*Pitts v. Newark Bd. of Educ.*,
766 A.2d 1206 (Super. Ct. N.J. App. Div. 2001) ....................................33

*Roberts v. Rich Foods, Inc.*,
654 A.2d 1365 (1995) ...............................................................25, 26

*Rodio v. Smith*,
123 N.J. 345 (1991)........................................................................28

*Sashihara v. Nobel Learning Cmtys., Inc.*,
461 N.J. Super. 195 (2019) ............................................................23

*Sinclair v. Merck & Co.*,
195 N.J. 51 (2008).........................................................................31

*Sun Chem. Corp. v. Fike Corp.*,
243 N.J. 319 (2020)...................................................................30, 31

*Union Ink Co. v. AT&T Corp.*,
801 A.2d 361 (App. Div. 2002) .....................................................29

*Weinberg v. Sprint Corp.*,
801 A.2d 281 (N.J. 2002)..............................................................33

*Zorba Contractors, Inc. v. Hous. Auth., Newark*,
827 A.2d 313 (Super. Ct. N.J. App. Div. 2003) ...................................33

## FEDERAL RULES

Rule 12(b)(6) ...........................................................................9, 35

Rule 12(f) ...................................................................................10

## STATUTES

N.J.S.A 2A:15–5.9 ...................................................................................34

N.J.S.A. 2A:15-5.12 ...............................................................................35

N.J.S.A. 2A:58C-1 ...........................................................................2, 3, 22

N.J.S.A. 2A:58C-1 – 11 ..........................................................................22

N.J.S.A. 2A:58C-1(b)(3)6........................................................................17

N.J.S.A. 2C:58-35 ..............................................................................20, 21

N.J.S.A. 56:8-2 .......................................................................................3, 27

N.J.S.A. 56:8-8 ........................................................................................23

## OTHER

28 U.S.C. § 1331 ........................................................................................5

28 U.S.C. § 1441 ........................................................................................5

28 U.S.C. § 1442 ........................................................................................5

28 U.S.C. § 1446 ........................................................................................5

5 Wright & Miller's Federal Practice & Procedure § 1285 (3d ed. 2004) .............13

Rachel Fedeli, *Court Records Reveal Sig Sauer Knew of Pistol Risks for Years*, The Smoking Gun (Aug. 14, 2025) ........................................................14

William A. Dreier et al., *New Jersey Products Liability & Toxic Torts Law* § 1:2–1 (2007) ........................................................................................17

Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 774 (2003) ........................................................................18

*Restatement (Second) of Torts* § 821B cmt. b (1979)........................................18, 21

W. Page Keeton *et al.*, *Prosser and Keeton on Torts* § 86 at 617–18 (5th ed. 1984) .................................................................................................................20

## I.    PRELIMINARY STATEMENT

Plaintiffs' First Amended Complaint ("FAC" or "Amended Complaint") rests on legal theories that have been squarely rejected by the New Jersey Supreme Court and Appellate Division. And Plaintiffs seek relief—a statewide ban on non-military ownership and distribution of one of the nation's most popular handguns—that is foreclosed by the Second Amendment to the Constitution. Plaintiffs fail, moreover, to support their legally invalid claims with allegations of non-speculative facts, relying instead on unadjudicated third-party product liability claims (the vast majority of which have been dismissed) and a fabricated and, thus, immaterial account of a U.S. Army solicitation process in which the very handgun at issue was selected as the Army's standard-issue service pistol. The Amended Complaint should be dismissed in full.

The central premise of the Amended Complaint is that Sig Sauer Inc.'s ("Sig Sauer") P320 handgun is defective and that such defect has caused accidental misfires injuring the owners of those guns. This premise has been repeatedly rejected in individual product liability lawsuits brought against Sig Sauer, and four different appellate courts have upheld the exclusion of plaintiff experts seeking to support these claims as unreliable and speculative. *See Herman v. Sig Sauer Inc.*, No. 23-6136, 2025 WL 1672350 (10th Cir. June 13, 2025); *Slatowski v. Sig Sauer, Inc.*, 148

1

F.4th 132 (3d Cir. 2025); *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213 (6th Cir. 2025); *Northrop v. Sig Sauer, Inc.*, 406 So. 3d 193 (Fla. Dist. Ct. App. 2025).

More importantly here, Plaintiffs fail to proffer any legal theory under which they can bring suit based on such product defect claims. Plaintiffs first seek to package their claims under the rubric of public nuisance, but the New Jersey Supreme Court has rejected the expansion of the doctrine of public nuisance to product defects. *See In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007) ("We cannot help but agree with the observation that, were we to find a cause of action here, nuisance law 'would become a monster that would devour in one gulp the entire law of tort.'" (quoting *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir.1993))).

Plaintiffs' fallback approach of seeking recovery under the New Jersey Product Liability Act ("PLA"), N.J.S.A. 2A:58C-1, is likewise unavailing. The PLA provides a cause of action to individuals who allege that they were harmed by a product, not to the State purporting to act in its capacity as *parens patriae*. Moreover, Plaintiffs' theory of design defect—that the P320 handgun is defective because Sig Sauer offers the handgun with a manual thumb safety as an optional rather than as a mandatory feature—directly contradicts a New Jersey Appellate Division ruling last year that barred design defect claims where consumers chose to purchase the product

2

without an available safety feature. *See Berkoski v. Honda Motor Co.*, 328 A.3d 986 (N.J. Super. Ct. App. Div. 2025).

Plaintiffs' Consumer Fraud Act ("CFA") allegations fare no better, as they are based on claims of misrepresentations under N.J.S.A. 56:8-2 and are premised on statements that New Jersey courts have found to be too vague to constitute misrepresentations of material fact. These claims are, in any event, predicated on product defect allegations that are subsumed by the PLA. And Plaintiffs' request for punitive damages must be stricken because plaintiffs fail to assert any claim for which they could be entitled to compensatory damages (a necessary predicate to punitive damage awards) and fail to allege facts upon which a claim for punitive damages could rest.

Beyond these fundamental flaws in their legal theories, Plaintiffs fail to allege facts to meet their burden under the Second Amendment of the United States Constitution to justify their requested statewide ban on non-military possession and distribution of the Sig Sauer P320 handgun. In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022), the Supreme Court held that a state cannot so infringe on Second Amendment rights without establishing that its proposed action "is consistent with this Nation's historical tradition of firearm regulation." Plaintiffs point in their FAC to a handful of unadjudicated claims regarding accidental misfires—an occurrence that unfortunately happens with all types of firearms—but

they do not, and cannot, suggest that this inherent risk provides a historical anchor for the requested relief. *See Bruen*, 597 U.S. at 47 ("Whatever the likelihood that handguns were considered 'dangerous and unusual' during the colonial period, they are indisputably in 'common use' for self-defense today. They are, in fact, 'the quintessential self-defense weapon.'" (quoting *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008))).

The fatal weaknesses in Plaintiffs' FAC are all the more glaring because of the unique statutory powers afforded to the Attorney General to conduct pre-suit investigations, authorities that the former Attorney General apparently eschewed in his rush to hold a press conference in the final weeks of a gubernatorial campaign. The resulting Amended Complaint is a constellation of allegations that contradict governing law, are unadorned by the requisite facts, and rely heavily on an invented account of the U.S. Army's selection of the P320 handgun that is plainly false and should be stricken. This lawsuit has no basis in law or fact and must be dismissed.

## II.    **PROCEDURAL AND FACTUAL BACKGROUND**

### A.    **Procedural Background**

Plaintiffs filed this action on October 16, 2025, in the Superior Court of New Jersey, Essex County. Plaintiffs are the Attorney General of the State of New Jersey and the Director of the New Jersey Division of Consumer Affairs. Sig Sauer removed the case to the United States District Court for the District of New Jersey

on November 20, 2025, based on federal question, federal officer, and federal enclave jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446. Plaintiffs filed their FAC on December 19, 2025. Sig Sauer now moves to strike certain portions of that Amended Complaint and to dismiss this lawsuit in its entirety.

### B.    Plaintiffs' Allegations

Sig Sauer manufactures firearms for sale to the military, federal, state, and local law enforcement, commercial purchasers, and individual consumers. *See* FAC ¶ 12. One such firearm is the P320 semi-automatic, striker-fired pistol. *See id*. ¶ 42. Plaintiffs allege that the P320 handgun is susceptible to unintentional discharges and is "not safe for users and those around them" and causes harm to New Jersey citizens and institutions. *See id*. ¶¶ 7, 129-131. Plaintiffs rely heavily in the FAC on unverified media reports and unresolved individual product liability claims filed against Sig Sauer. *See, e.g.*, *id*. ¶¶ 1-6, 64-75, 86, 89-90, 93. Plaintiffs' FAC is devoid of allegations that the State conducted any independent investigation into the defects asserted in the media reports and separate litigation. *See generally id*.

Plaintiffs' allegations, essentially product liability defect claims, are premised on theories that the Sig Sauer P320 depends on "weak 'internal safeties'" and accordingly should not be offered for sale without a mandatory external thumb safety. *See id*. ¶¶ 42-54. Plaintiffs separately allege that the P320 is prone to misfire when dropped, but then acknowledge that this risk was addressed years ago through

a trigger design upgrade incorporated in all P320 handguns manufactured after August 2017. *See id*. ¶¶ 80-83.

Plaintiffs seek to provide a factual predicate for their product defect allegations by recounting an imagined solicitation process by which, they allege, the U.S. Army selected the P320 handgun as the standard service pistol for the military only after demanding that Sig Sauer add an external thumb safety due to concerns about the handgun design. *See id*. ¶¶ 61, 124. But the very solicitation document upon which they rely for their allegations establishes that this recounting is false.

In its Notice of Removal, Sig Sauer identified specific language in the U.S. Army solicitation document that sets forth the true account of the U.S. Army's testing and selection of the P320. In the FAC, Plaintiffs accordingly have added two new paragraphs acknowledging—as they must—that (1) the U.S. Army required an external thumb safety in its original Request for Proposals ("RFP") issued to all handgun manufacturers, *see id*. ¶ 55, and that (2) the only safety issue identified by the U.S. Army with respect to the P320 (which related to a separate issue involving drop testing) was resolved through the now-standardized redesign of the trigger mechanism, not the addition of a thumb safety. *See id*. ¶ 58. Remarkably, however, Plaintiffs fail to withdraw the other paragraphs from their original Complaint, in which they continue to rely heavily on a purported U.S. Army rejection of the P320 that never occurred. *See id*. ¶ 11. Plaintiffs are thus left with an FAC that is both self-

contradictory and fundamentally flawed.

In an attempt to avoid federal jurisdiction, Plaintiffs also amended their Complaint to purportedly withdraw any claim of product defect with respect to the continued use and distribution of the P320 by the U.S. military. But this amendment likewise deprives them of any plausible factual basis for their requested relief because Sig Sauer offers the very same U.S. Army-selected P320 model that Plaintiffs endorse (the P320 M17 and M18 models with a manual thumb safety) for sale to law enforcement and civilians in New Jersey. *See id.* ¶ 48. Sig Sauer also sells numerous other P320 models with different features, including a manual thumb safety, for such purchasers to choose (or not choose) in customizing their firearm to fit their specific needs.[1]

Plaintiffs' inexplicable, continued reliance on their false accounting of the U.S. Army solicitation process undermines, as well, their claims of consumer fraud.

---

[1]  *See* https://www.sigsauer.com/firearms/pistols/p320.html (last visited Jan. 23, 2026) (showing various models offered for sale, including those with a manual thumb safety). Because plaintiffs cite to and reference the Sig Sauer website in the FAC, it may properly be considered for Rule 12 motions. *See Najjar v. Salameh*, 787 F. Supp. 3d 8, 14 (D.N.J. 2025) (in evaluating motions to dismiss, courts can consider matters incorporated by reference or integral to the claim, matters of public record or subject to judicial notice, orders, and items in the record of the case); *see also Kohn, Savett, Klein & Graf, P.C. v. Cohen*, No. CIV.A. 89-2173, 1990 WL 42244, at *2 (E.D. Pa. Apr. 10, 1990) ("a motion to strike must rise or fall on whatever is within the four corners of the pleadings or within the scope of judicial notice.").

Plaintiffs purport to base these claims in part on Sig Sauer's factually-correct statements that the P320 was "Chosen by the U.S. Military" and was selected by the U.S. Army "in 2017, after one of the most rigorous and highly competitive military reviews in history." *Id.* ¶ 123 (quoting *P320 Pistols*, Sig Sauer, https://www.sigsauer.com/firearms/pistols/p320.html). Plaintiffs also point to statements in the P320 Operator's Manual opining as to its safety profile and Sig Sauer's justified defense on its website of the safety of its handgun as evidence of material misstatements of fact. *See id*. ¶¶ 101-119. But Plaintiffs ignore the fact that these very same sources provide explicit warnings that handgun purchasers should "never rely completely on any safety mechanism"[2] and that the "[c]areless and improper handling of any firearm can result in an unintentional discharge . . . The best safety is proper and applied training in safe firearm handling. Always handle your firearm as though you expect the safeties not to work."[3]

While this entire lawsuit is premised on allegations that the P320 is defectively designed, Plaintiffs plead nine causes of action: contribution to public nuisance (Counts One, Four, Five, Eight, and Nine); violations of the New Jersey Product

---

[2] *See, e.g.,* Sig Sauer, Sig P320® Pistols Operator's Manual: Handling & Safety Instructions, at 3 (2021), https://www.sigsauer.com/media/sigsauer/resources/OPERATORS_MANUAL_P320_8501909-01_REV08_LR.pdf (last visited Jan. 23, 2026).
[3] *See id*.

Liability Act (Counts Two and Three); and violations of the New Jersey Consumer Fraud Act (Counts Six and Seven). *See* FAC ¶¶ 132-218. They seek extraordinary injunctive relief to preclude Sig Sauer from selling all P320 handguns for distribution commercially and to local law enforcement in New Jersey, to control Sig Sauer's specific marketing language, and to force Sig Sauer to recall *all* P320s within the state, regardless of whether they contain the supposed defect relating to an external thumb safety alleged in the FAC (subject to their forum-shopping exception for military personnel). *See id*. at 57 (Prayer for Relief). They also seek monetary damages, including statutory damages, punitive damages, restitution, disgorgement of profits, and attorneys' fees and expenses. *See id*.

Plaintiffs do not allege any facts in their Amended Complaint that would square their requested P320 handgun ban with the rights afforded by the Second Amendment to the United States Constitution.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

Courts dismiss a complaint under Rule 12(b)(6) where it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Peterson v. Goldin*, 747 F. Supp. 3d 714, 718 (D.N.J. 2024) (quoting *Malleus v. George*, 641 F.3d 560, 563 (3d

Cir. 2011)); *Doe v. N. Reg'l Police Dep't of Allegheny Cnty.*, No. 24-2481, 2025 WL 1950065, at *2 (3d Cir. July 16, 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007)). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Doe*, 2025 WL 1950065, at *2 (quoting *Twombly*, 550 U.S. at 555). Where a complaint fails to show "more than a sheer possibility that a defendant has acted unlawfully," and provides only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," it must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008).

### B. Rule 12(f)

Courts may strike from a pleading any matter that is redundant, immaterial, impertinent, or scandalous. Fed. R. Civ. P. 12(f). Allegations should be stricken where they "have no possible relation to the controversy and may cause prejudice to one of the parties, or . . . confuse the issues." *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 459 (D.N.J. 2020) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)); *see LY Berditchev Corp. v. Truss Cosm. Corp.*, No. 22-04242, 2023 WL 6307462, at *2 (D.N.J. Sep. 28, 2023); *Spanish Sports Network, LLC v. Spanish Football Prods., LLC*, No. 20-7354, 2021 WL 2284260, at *4 (D.N.J. June 4, 2021) (allegations are "immaterial" when they have "no essential or important relationship to the claim for relief") (quoting *Del. Health*

*Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-92 (D. Del. 1995)). "The purpose of a motion to strike is to save time and expense through the excision of matter from the pleadings that will not affect the outcome of the case." *LY Berditchev Corp.*, 2023 WL 6307462, at *2 (citing *Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 619 (D.N.J. 2000)). Courts have "broad discretion" in resolving motions to strike. *Red Hawk Fire*, 449 F. Supp. 3d at 459 (quoting *Turner v. N.J. State Police*, No. 08-5163, 2014 WL 6991892, at *2 (D.N.J. Dec. 5, 2014)).

IV.   **MOTION TO STRIKE**

   A.   **Plaintiffs' False Allegations Regarding the U.S. Army's Procurement of the P320 Should Be Stricken as Immaterial Because They Have No Bearing on Plaintiffs' Claims and Will Confuse the Issues.**

In support of their allegation that the P320 is defective—and in a futile attempt to square their claim that the Sig Sauer P320 constitutes a public nuisance with the fact that the U.S. Army selected the very same handgun over seven competing submissions as the standard service weapon for the U.S. military—Plaintiffs allege that the U.S. Army's procurement testing found the P320 to be unsafe and accordingly required Sig Sauer to add a manual thumb safety:

> During a procurement evaluation in 2016 and 2017, the U.S. Army found that without an external safety that would prevent any accidental trigger movement, the Sig Sauer P320 posed an unacceptable danger of firing when the user did not want to fire. The Army therefore required

11

> Sig Sauer to add a manual thumb safety feature for the variants of the P320 it procured, known as the M17 and M18.[4]

*Id*. ¶ 11.

This allegation is demonstrably false: as Plaintiffs now acknowledge through selective amendments to their FAC, the publicly available Army handgun solicitation and documents Plaintiffs cite in their Amended Complaint show the Army made no such finding.[5] As such, Plaintiffs' allegations regarding the Army procurement process do not support Plaintiffs' claims that P320s are defective and will serve only to confuse the issues here. *See Red Hawk Fire*, 449 F. Supp. 3d at 459; *Spanish Sports Network, LLC*, 2021 WL 2284260 at *4 (allegations must be stricken as immaterial when they have "no essential or important relationship to the claim[s]") (quoting *Del. Health Care, Inc.*, 893 F. Supp. at 1291-92)). These allegations should be stricken.

The actual history of the U.S. Army's original August 28, 2015 solicitation and RFP for a Modular Handgun System, and the selection and testing of the P320 handgun is set forth in the U.S. Department of Defense Director, Operational Test and Evaluation FY 2017 Annual Report ("2017 DOD Report"), which Plaintiffs cite

---

[4] *See also* FAC ¶ 124 ("The U.S. military expressly rejected the original P320 because, among other reasons, it lacks an external safety."); *id.* ¶¶ 56-61, 79.

[5] These documents are incorporated by reference in the Amended Complaint and may be considered here. *See supra* n.1.

in their FAC in support of their false narrative.[6] That solicitation makes clear that the Army required "an external safety mechanism" on all handgun candidates at the very beginning of the process, regardless of the manufacturer or individual firearm design.[7] The solicitation specified that "[s]ubmissions without these features will not be considered for evaluation."[8]

After being confronted with this language in Sig Sauer's Notice of Removal, Plaintiffs amended their Complaint, acknowledging that the Army's solicitation in 2015 required all bids to contain an external safety (FAC ¶ 55). But they bizarrely continue to allege elsewhere in the FAC that the U.S. Army added this requirement in 2017 based on concerns about the P320 design—which is pure fabrication.[9] The

---

[6] *See* FAC ¶ 55 n.38; Dep't of Def., XM17/XM18 Modular Handgun System (MHS), in FY 2017 Annual Report at 134 (Jan. 2018) https://www.dote.osd.mil/Portals/97/pub/reports/FY2017/other/2017DOTEAnnual Report.pdf?ver=2019-08-19-113553-787 (last visited Jan. 23, 2026).

[7] Dep't of Def., Request for Proposal (RFP) for the Procurement of the XM17 Modular Handgun System (MHS) at 340 M.3.1.3, (Aug. 28, 2015), https://sam.gov/api/prod/opps/v3/opportunities/resources/files/6b270ab67d59ba94 7c5fdbc3e97ee8e2/download?&status=archived&token= (on file with System for Award Management, an official website of the U.S. Government). *See supra* n. 1.

[8] *Id.*

[9] The FAC, accordingly, also runs afoul of Rule 8, which bars internally contradictory allegations. *See Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 236 (W.D. Pa. 2015) (Rule 8 does not permit allegations that are internally contradictory); *Mary Kay, Inc. v. Dunlap*, No. 3:12-CV-0029-D, 2012 WL 2358082, at *8 (N.D. Tex. June 21, 2012) (quoting 5 Wright & Miller's Federal Practice & Procedure § 1285 (3d ed. 2004)) (same, inconsistency should only be permitted when there is legitimate doubt about the facts or legal theories); *see also Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir.1996) ("[A] pleader may

2017 DOD Report makes clear that the U.S. Army conducted bid sample testing through June 2016 and then selected the P320 handgun over seven competing handguns.[10] That selection was upheld by the Government Accountability Office following a challenge by one of the rejected applicants.[11] The 2017 DOD Report then provides a detailed summary of the U.S. Army assessment of the P320 handgun based on post-selection product verification testing ("PVT") that tested the handgun "out to the required service life of 25,000 rounds per pistol."[12] The P320 handgun satisfied all of the U.S. Army reliability requirements.[13] The U.S. Army did not identify any problems with the P320 internal safeties, and there was no report of any inadvertent misfires of the handgun during this testing.[14]

Plaintiffs follow the same tack in their allegations about the U.S. Army's findings with respect to drop misfires. Plaintiffs contend in the FAC that the U.S. Army required Sig Sauer to add an external thumb safety after the P320 "failed [the Army's] drop testing."[15] But as Plaintiffs were forced to concede after being

---

assert contradictory statements of fact only when legitimately in doubt about the facts in question."); *Total Coverage, Inc. v. Cendant Settlement Servs. Grp.*, 252 F. App'x 123, 126 (9th Cir. 2007) (same).

[10] 2017 DOD Report, at 134.

[11] 2017 DOD Report, at 134.

[12] *Id.*

[13] *Id.* at 135.

[14] *Id.*

[15] FAC ¶ 57 (alteration in original) (quoting Rachel Fedeli, *Court Records Reveal Sig Sauer Knew of Pistol Risks for Years*, The Smoking Gun (Aug. 14, 2025),

confronted with the truth in Sig Sauer's removal notice, *see* FAC ¶ 58, that contention is false. As the 2017 Report makes clear, the concern about drop misfires (which was identified in aggressive post-selection testing that went beyond the U.S. Army's regular testing protocols and industry standards) was unrelated to the handgun's internal safeties and was addressed through modifications of the trigger and firing components, *not* through addition of an external manual safety.[16] Indeed, the 2017 DOD Report explains that the U.S. Army thereafter tested and confirmed that the P320 design protects against drop fires in handguns "with the safety *not* engaged."[17] It also is undisputed that these same modifications were incorporated in *all* P320 handguns sold in New Jersey since 2017.[18] These allegations, accordingly, can provide no basis for the Plaintiffs' claims against the current P320 design.[19]

Permitting Plaintiffs' knowing, inaccurate and inflammatory allegations to remain in the FAC would result in significant prejudice to Sig Sauer. They would require both Sig Sauer and the Court to expend time, resources, and effort to probe allegations that "will not affect the outcome of the case" and whose falsity will serve only to confuse the issues. *See LY Berditchev Corp.*, 2023 WL 6307462, at *2 (citing

---

https://smokinggun.org/court-records-reveal-sig-sauer-knew-of-pistolrisks-for-years).

[16] 2017 DOD Report, at 133.

[17] *Id.* at 135 (emphasis added).

[18] FAC ¶ 83.

[19] FAC ¶ 83.

*Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 619 (D.N.J. 2000))

("The purpose of a motion to strike is to save time and expense through the excision

of matter from the pleadings that will not affect the outcome of the case."). Sig Sauer

would be required to respond to these false allegations through fact discovery and

dispositive motion practice regarding issues unrelated to the outcome of the case.

The Court, likewise, will be called upon to address discovery and dispositive

arguments regarding these allegations, to no purpose. The allegations should be

stricken.

## V.    <u>MOTION TO DISMISS</u>

### A.    Plaintiffs' Public Nuisance Claims (Counts 1, 4, 5, 8, and 9) Must Be Dismissed Because They Are Grounded in Product Liability and May Only Be Addressed Under the New Jersey Product Liability Act.

Plaintiffs attempt to convert product defect claims regarding the P320

handgun into a public nuisance cause of action, but this strategy has been squarely

rejected by the New Jersey Supreme Court. *See In re Lead Paint Litig.*, 924 A.2d

484, 505 (N.J. 2007). Plaintiffs' public nuisance claims must be dismissed.

In *In re Lead Paint Litig.*, local municipalities and counties sued lead paint

manufacturers to recover costs of removing lead paint from buildings and providing

medical care to residents, alleging public nuisance and other claims. The New Jersey

Supreme Court found that plaintiffs' complaints failed to state a claim for public

nuisance, in part because the "central focus of plaintiffs' complaints is that defendants were aware of dangers associated with lead [paint] . . . and failed to warn of those dangers." *In re Lead Paint Litig.*, 924 A.2d at 503. Because the gravamen of plaintiffs' action focused on this "classic articulation of tort law duties . . . to warn of or to make safe," the claims asserted were not nuisance claims but were instead "cognizable only as products liability claims." *Id.* at 503. Accordingly, they fell "squarely" within the purview of New Jersey's PLA, which is "the sole basis of relief under New Jersey law available to consumers injured by a defective product."[20] *Gonzalez v. Apple Inc*, No. 22-2617, 2022 WL 16922178, at *2 (D.N.J. Nov. 14, 2022) (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991)); *see In re Lead Paint Litig.*, 924 A.2d at 503 (quoting William A. Dreier et al., *New Jersey Products Liability & Toxic Torts Law* § 1:2–1 (2007)) (holding the PLA establishes "one unified, statutorily defined theory of recovery for harm caused by a product"). Indeed, permitting Plaintiffs' public nuisance claims to proceed would create a cause of action that is "entirely inconsistent with the PLA's comprehensive legislative scheme" and "would become a monster that would devour in one gulp the entire law of tort." *Id.* at 505 (quoting *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993)).

---

[20] The PLA contains exceptions for express warranty claims and environmental torts, which need not be pursued under the Act. N.J.S.A. 2A:58C-1(b)(3)6.

17

The *In re Lead Paint Litig.* court identified two essential elements of public nuisance that preclude the extension of the tort to cover product liability claims. First, "essential to the concept of public nuisance … is the 'interference with the interests of the community at large.'" *Id.* at 495 (quoting *Restatement (Second) of Torts* § 821B cmt. b (1979)). The court explained that public nuisance claims "must [involve] a public right, in the sense of a right 'common to all members of the general public,' rather than a right merely enjoyed by . . . a large number, of people." *Id.* at 497 (quoting *Restatement (Second) of Torts* § 821B cmt. g (1979)). The court noted that product liability claims do not satisfy this requirement: "A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be . . . defrauded or negligently injured." *Id.* Second, and "[e]qually essential to the concept of a public nuisance tort . . . is the fact that it has historically been linked to the use of land by the one creating the nuisance." *Id.* at 495 (citing Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 774 (2003)).

Plaintiffs' public nuisance claims here satisfy neither of these essential elements. Plaintiffs squarely tie their public nuisance claims to product liability and related consumer fraud allegations. *See* FAC ¶¶ 132-142, 164-183, 197-218 (Causes of Action One, Four, Five, Eight, and Nine). And they rest those predicate allegations on a handful of third-party claims by individual gun owners who claim

18

they were themselves negligently injured or misled by inadequate warnings. Plaintiffs make no attempt to allege facts—nor could they—that tie these individual personal injury claims to a public right or to the use of land. As the New Jersey Supreme Court admonished, were this Court to permit Plaintiffs' claims to proceed, it "would stretch the concept of public nuisance far beyond recognition and would create a new and entirely unbounded tort antithetical to the meaning and inherent theoretical limitations of the tort of public nuisance." *In re Lead Paint Litig.*, 924 A.2d at 494.[21]

The United States Court of Appeals for the Third Circuit agrees. In a case that accurately predicted the New Jersey Supreme Court holding in *In re Lead Paint Litig.*, the court rejected a public nuisance lawsuit filed by the County of Camden that sought to hold a handgun manufacturer liable for government costs associated with the criminal misuse of handguns. *See Camden Cnty. Bd. of Chosen Freeholders*

---

[21] Consider, for example, the dozens of consolidated product liability actions in New Jersey that involve far larger numbers of alleged injuries. Under Plaintiffs' rationale, all of those products would become a "public nuisance" to be banned, from surgical mesh and hip implants to asthma medication. *See, e.g.*, *In re Proceed Mesh Litig. (Proceed Surgical Mesh)*, Master Docket No. ATL-L-000794-19 (N.J. Super. Ct. Law Div. Mar. 12, 2019) (420 cases filed as of July 31, 2019, in product liability action regarding surgical mesh); *In re Singulair Litig.*, Master Docket No. ATL-L-000481-22 (N.J. Super. Ct. Law Div. Jan. 4, 2022) (247 cases filed as of March 10, 2022, in product liability action regarding allergy and asthma medication); *In re Stryker Rejuvenate & ABG II Modular Hip Implant Litig.*, Master Docket No. BER-L-000936-13 (N.J. Super. Ct. Law Div. Feb. 6, 2013) (56 cases filed as of August 1, 2022, in products liability action regarding prosthetic hip replacement).

*v. Beretta U.S.A. Corp.*, 273 F.3d 536 (3rd Cir. 2001). In that case, plaintiffs at least attempted to satisfy the public right prong by contending that the public at large was harmed by "the widespread criminal use of handguns." *Id.* at 538. Nonetheless, the district court dismissed the complaint on the pleading, and the Third Circuit affirmed.

Like the New Jersey Supreme Court, the Third Circuit explained that "[t]raditionally, the scope of nuisance claims has been limited to interference connected with real property or infringement of public rights," and pointed to "dismissal of nuisance claims . . . [u]nless the facts can be brought within one of the two categories mentioned." *Id.* at 539-40 (citing W. Page Keeton *et al.*, *Prosser and Keeton on Torts* § 86 at 617–18 (5th ed. 1984)).

> "Whatever the precise scope of public nuisance law in New Jersey may be, no New Jersey court has ever allowed a public nuisance claim to proceed against manufacturers for lawful products that are lawfully placed in the stream of commerce. On the contrary, the courts have enforced the boundary between the well-developed body of product liability law and public nuisance law."

*Id.* at 540; *see also City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3rd Cir. 2002) (affirming dismissal of similar public nuisance complaint under Pennsylvania law).

Plaintiffs cannot avoid this governing authority by pointing to New Jersey's new public nuisance statute aimed at gun-related products. *See* N.J.S.A. 2C:58-35.

20

As the New Jersey Supreme Court explained in *In re Lead Paint Litig.*—in which plaintiffs likewise relied on a statute in which the New Jersey legislature characterized the hazards of lead paint as a public nuisance—the legislature's discussion of public nuisance with regard to gun-related products must be read "in keeping with the term's historical meaning and intent." 924 A.2d at 494.[22] While there are significant questions as to the viability of N.J.S.A. 2C:58-35 even in that context, *see Camden County Board of Chosen Freeholders*, 273 F.3d 536, the statute has no applicability here.

Finally, Plaintiffs further distort the doctrine of public nuisance by seeking to rely on that tort as a basis for compensatory damages. As *In re Lead Paint Litig.* makes clear, even in cases where there may be a valid claim for public nuisance (such as in environmental actions), a public entity suing in nuisance "has only the right to abate" the nuisance, and "there is no right either historically, or through the *Restatement (Second)*'s formulation, for the public entity to seek to collect money

---

[22] The legislative history of N.J.S.A. 2C:58-35 confirms that the statute is not intended to address product defect claims like those pressed here. Rather, as confirmed in public statements from the former governor and former Attorney General Platkin, the statute was enacted "to combat gun violence and hold accountable irresponsible gun dealers and manufacturers who profit from this bloodshed." *See* Governor Murphy Signs Sweeping Gun Safety Package 3.0 to Continue the Fight Against Gun Violence," available at https://repo.njstatelib.org/server/api/core/bitstreams/6afd37a6-56fe-4ad0-995f-4d6c04b6e6bb/content, at 25 (last visited Jan. 23, 2026).

21

damages in general . . . ." 924 A.2d at 498-99; *see id.* at 502 (where "complaints seek damages rather than remedies of abatement," they "fall outside the scope of [nuisance] remedies available to a public entity plaintiff"); *see also N.J. Dep't of Env't Prot. v. Hess Corp.*, No. A-2893-18T2, 2020 WL 1683180, at *6 (N.J. Super. Ct. App. Div. Apr. 7, 2020) (noting a public entity is "not entitled to seek typical tort damages arising from [the defendant's] operations creating a public nuisance, such as loss in value of property").

### B. Plaintiffs' PLA Claims (Counts 2 and 3) Must Be Dismissed Because Plaintiffs Lack Standing to Bring Them.

In tacit recognition of the weakness of their public nuisance claims, Plaintiffs separately seek through Counts Two and Three of their FAC to bring claims directly under the Products Liability Act. Plaintiffs lack standing to bring such claims.

The Legislature's purpose in adopting the PLA was "'to limit the expansion of products-liability law' and 'to limit the liability of manufacturers . . . .'" *Gonzalez*, 2022 WL 16922178, at *2 (quoting *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019)); *In re Lead Paint Litig.*, 924 A.2d at 503; N.J.S.A. 2A:58C-1 – 11. Accordingly, the PLA limits who may sue for harm allegedly caused by a product ("claimants") to "any person who brings a product liability action, . . . [or] the person's decedent, or . . . the [minor] person's parent or guardian." N.J.S.A. 2A:58C-1. Notably absent is any language—present in other statutes—vesting the

Attorney General with authority to bring such claims. *See, e.g.*, N.J.S.A. § 56:8-8 (granting Attorney General power to bring suit under the CFA for injunctive relief).

Plaintiffs seek to avoid this fundamental standing problem by invoking their *parens patriae* authority. *See* FAC ¶ 31. But "[t]he doctrine of *parens patriae* can only be used in certain, well-defined cases." *Broselow v. Fisher*, 319 F.3d 605, 609 (3d Cir. 2003). A State may seek recovery under *parens patriae* "only when it can show that it has a 'quasi-sovereign interest,'" which is "'an interest apart from the interests of particular private parties' that affects a 'sufficiently substantial' segment of its residents." *Broselow*, 319 F.3d at 609 (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607-08 (1982)); *see Alfred L. Snapp & Son, Inc.* 458 U.S. at 601 ("Interests of private parties are obviously not . . . sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement."). The doctrine of *parens patriae* "does not involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves." *Alfred L. Snapp & Son*, *Inc.*, 458 U.S. at 600.

Where, as here, individual plaintiffs can pursue legal relief on their own behalf, courts have found the State cannot also bring suit under its *parens patriae* authority. *See, e.g.*, *Sashihara v. Nobel Learning Cmtys., Inc.*, 461 N.J. Super. 195, 204 (2019) ("*[p]arens patriae* does not apply here because it exists to help those unable to protect themselves, [but] [i]n this case, the [New Jersey Law Against

23

Discrimination] gives those who have been discriminated unlawfully against the authority to protect themselves by filing causes of action"); *see also Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972) (holding Hawaii could not bring suit as *parens patriae* to recover damages for injury to its general economy under the Clayton Act, which allows the state to bring treble damages in its proprietary capacity and for citizens to bring suit based on damage to their business or property, because State's suit would "open the door to duplicative recoveries").

Here, the State's PLA claims assert the same interests that private plaintiffs would assert under the PLA—indeed, the FAC acknowledges that several private plaintiffs currently are pursuing individual lawsuits. *See* FAC ¶¶ 1-4, 18, 67-75, 86, 89-90. Accordingly, the State has not alleged a quasi-sovereign interest and *parens patriae* standing does not apply. Plaintiffs' claims under the PLA should be dismissed.

**C.  Plaintiffs' Design Defect PLA Claim (Count 2) Also Fails As a Matter of New Jersey Law Because Consumers Are Provided the Option of Purchasing P320 Handguns with the Manual Thumb Safety that Plaintiffs Allege Cures the Claimed Product Defect.**

Plaintiffs focus their claims of product defect on Sig Sauer's alleged failure to equip the P320 handgun with an external thumb safety, which they assert would prevent the unintended discharges and injuries at issue in their FAC. *See, e.g.*, FAC ¶¶ 48-49, 145, 149. But Plaintiffs admit that Sig Sauer offers an external thumb

safety as an option for purchase on its P320s. *See* FAC ¶ 48. Under New Jersey law, a manufacturer may not be liable in design defect where a plaintiff elects not to select available safety features that could have prevented the alleged injury. *See Berkoski v. Honda Motor Comp.*, 328 A.3d 986 (N.J. Super. Ct. App. Div. 2025) (granting summary judgment for manufacturer because "we do not read the [PLA] as allowing plaintiff to claim a design defect merely because there were available driver-assistance technologies"). For this reason, as well, Plaintiffs have failed to allege any facts that state a cognizable design defect theory under New Jersey law and this claim must be dismissed.

In *Berkoski,* plaintiff alleged that an automobile was defectively designed because it was not equipped with two lane-assist safety devices that were available as options on more expensive models of the car and allegedly would have prevented the accident at issue. 328 A.3d at 988-89. In finding the manufacturer was not liable, the court relied on Section 3(a)(2) of the PLA, which "provides an absolute, affirmative defense for defendants in suits for design defect, if 'the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product.'" *Berkoski*, 328 A.3d at 991 (quoting *Roberts v. Rich Foods, Inc.*, 654 A.2d 1365 (1995)). The court explained that an ordinary user of automobiles recognizes their inherent dangers, and, while optional lane assist devices would improve safety,

car consumers realize they cannot rely exclusively on those devices. *Id.* at 992-93. This was particularly true in light of the express statements in the car owner's manual warning that safety devices have limitations and are no substitute for proper use by the consumer. *Id.* at 992-93.

The court rejected plaintiff's claim for design defect because it would impose on all users "the requirement and cost of having the [safety] systems installed and activated in their vehicles," whereas "many consumers chose not to purchase vehicles with these features." *Id.* at 993-94. The court rejected the invitation to "broadly expand the potential liability of manufacturers when 'the Legislature's policy [was] to limit [their] liability,'" and found the car was not defectively designed as a matter of law. *Id.* at 993 (quoting *Rich Foods*, 654 A.2d at 1369).

Here, Plaintiffs make the same allegation that was rejected in *Berkoski*: that the P320 is defective because it does not include an additional external safety device, which is an available option for consumers to purchase. As in *Berkoski*, ordinary gun consumers recognize the inherent dangers of gun use, particularly in light of the P320 Operator Manual's explicit warnings to "never rely completely on any safety

mechanism"[23] and that safety devices do "not replace safe handling practices."[24] Accordingly, as in *Berkoski*, Plaintiffs have failed to allege facts that could support a claim of product defect under the PLA, and all of their claims resting upon alleged liability under that statute should be dismissed.[25]

### D. Plaintiffs' Claims Under the New Jersey Consumer Fraud Act (Counts 6 and 7) Fail for Multiple Reasons.

Plaintiffs' claims brought under New Jersey's Consumer Fraud Act must be dismissed both because they are based on alleged misrepresentations (N.J.S.A. 56:8-

---

[23] *See, e.g.*, Sig Sauer, Sig P320® Pistols Operator's Manual: Handling & Safety Instructions, 3 (2021), https://www.sigsauer.com/media/sigsauer/resources/OPERATORS_MANUAL_P320_8501909-01_REV08_LR.pdf ("Careless and improper handling of any firearm can result in an unintentional discharge . . . . The best safety is proper and applied training in safe firearm handling. Always handle your firearm as though you expect the safeties not to work.").

[24] *See Najjar*, 787 F. Supp. 3d at 14; *Red Hawk Fire*, 449 F. Supp. 3d at 458 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997)) ("documents 'integral to or explicitly relied upon in the complaint'" may be considered when assessing Rule 12(b)(6) motion).

[25] The FAC makes a cursory reference to a manufacturing defect claim but pleads no allegations or facts in support. *See* FAC ¶ 146. To the extent Plaintiffs intend to assert such a claim, their failure to identify "even in general terms, a particular error or mishap in the manufacturing process that caused [the P320] to deviate from Defendants' own standards," or that it "failed to conform to other identical units" requires dismissal of this claim. *Hindermyer*, 419 F. Supp. 3d at 827 (dismissing manufacturing defect claim where plaintiff alleged a "manufacturing defect of the filter" and "malfunction" but failed to further specify the defect); *see Vicente v. DePuy Synthes Co.*, 570 F. Supp. 3d 232, 243 (D.N.J. 2021) (similar).

2) that are not actionable under New Jersey law, and because Plaintiffs' allegations pertain to the same conduct that falls within the exclusive purview of the PLA.

> **1.     The Allegedly Deceptive Statements Plaintiffs Reference Are Mere "Puffery" or Are Accurate, Neither of Which Supports a CFA Claim Under New Jersey Law.**

Plaintiffs fail to plead any statements that can form the basis for a CFA claim. New Jersey courts have found that "there is indeed a distinction between misrepresentations of fact actionable under the CFA and mere puffing about a product or a company that will not support relief." *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (App. Div. 2003) (citing *Rodio v. Smith*, 123 N.J. 345, 352 (1991)). In contrast to the detailed factual assertions needed to support relief under the CFA, puffery is vague, conclusory, "highly subjective," and "fall[s] on the side of opinion rather than fact"; it is therefore "too vague to mislead the consumer" and is not actionable. *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608 (D.N.J. 2016).

Here, Plaintiffs base their CFA claims on Sig Sauer's statements that the P320 boasts an "enhanced level of safety," a "robust safety system," and is the "most operator-safety focused" handgun that features "safety without compromise" and has "exceeded U.S. military testing" standards. *See* FAC ¶¶ 14-16, 50-52. Such general statements touting the P320's safety and testing are precisely the types of statements that New Jersey courts have found to be "too vague to constitute

misrepresentations of material fact and amount to mere puffery." *Argabright*, 201 F. Supp. 3d at 608 (advertising products as "routinely tested and certified," "meet or exceed rigorous industry and regulatory standards," and "free from defects in materials and workmanship" are puffery); *see also Gordon v. Sig Sauer, Inc.* No. H-19-585, 2019 WL 4572799, at *10 (S.D. Tex. Sept. 20, 2019) (dismissing express warranty claim in P320 product liability case, suggesting nearly identical statements did not promise defect-free performance).

These statements are non-actionable under the CFA for the additional reason that they are not deceptive or misleading as a matter of law. To support a claim under the CFA, an alleged misrepresentation must have "the capacity to mislead the average consumer." *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 503 (D.N.J. 2006) (quoting *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361 (App. Div. 2002)). Here, statements that the P320 is "chosen by all branches of the military," *see* FAC ¶¶ 12, 60, 123, are accurate statements of fact. Likewise, statements that it "is not possible for the P320 to discharge unless the trigger is fully actuated" and that the trigger must be "deliberately pulled" for the gun to fire, are not misleading. *See* FAC ¶¶ 107-08 (quoting *Learn the Facts*, Sig Sauer: P320 Truth.Com, https://www.sigsauer.com/p320-truth). They correctly explain that the P320 requires a full trigger pull to cause a discharge. Such statements do not support a claim under the CFA. *See Adamson*, 463 F. Supp. 2d at 503 (statement that product "may be less

likely to cause unpleasant side effects" was "accurate" and "not misleading or deceptive in any way," and could not support CFA claim).

Because Plaintiffs do not point to any statements that can support relief under the CFA, their claims must be dismissed.

### 2. Plaintiffs' CFA Claims Must Be Dismissed Because They Are Subsumed by the PLA.

Plaintiffs' CFA claims are premised upon the allegation that Sig Sauer made misrepresentations regarding the allegedly defective nature of P320 handguns. Because such allegations are predicated on a product defect, they fall squarely within the exclusive purview of the PLA. The CFA claims must be dismissed.

CFA claims are permitted to proceed in a product liability action only if such claims are premised on "different conduct" and "distinct types of harm" not covered by the PLA. *Sun Chem. Corp. v. Fike Corp.*, 243 N.J. 319, 324, 335 (2020); *see also id.* at 337-39. New Jersey courts look not to how claims are labeled in pleadings, but to "the nature of the claims brought . . . [as] dispositive of whether the PLA precludes the separate causes of action." *Fike*, 243 N.J. at 325; *see Gonzalez v. Apple Inc.*, 2022 WL 16922178, *2 (D.N.J. Nov. 14, 2022) (While "'nothing about the PLA prohibits a claimant from seeking relief under the CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices,' CFA claims 'that sound in the type of products liability action defined in the PLA' are subsumed by

the NJPLA and therefore 'must be brought under the PLA.'" (quoting *Fike*, 243 N.J. at 336-37, 339)); *Fike*, 243 N.J. at 336 (CFA claims that are "premised upon a product's manufacturing, warning, or design defect . . . must be brought under the PLA [and] CFA claims for the same conduct are precluded."); *see, e.g., Sinclair v. Merck & Co.*, 195 N.J. 51, 66 (2008) (holding because "[t]he heart of plaintiffs' case is the potential for harm caused by Merck's drug," it "is obviously a product liability claim" and "plaintiffs may not maintain a CFA claim").

New Jersey courts dismiss CFA claims as subsumed by the PLA where, as here, they are based on alleged misrepresentations deriving solely from a product's alleged defect. Indeed, where the alleged misrepresentation "would not be actionable" but for the alleged product defect, the CFA claim is subsumed by the PLA and cannot proceed. *See Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 824 (D.N.J. 2021) (where plaintiff became sick after receiving unsterile pharmaceuticals that were later recalled, CFA allegations that defendant misrepresented that product was "prepared with the utmost integrity to the rules and regulations" were subsumed by PLA because they were "premised on the product being defective"); *Schraeder v. Demilec (USA) LLC*, No. CIV. 12-6074 FSH, 2013 WL 3654093, at *4 (D.N.J. July 12, 2013) (where CFA claim was based on alleged misrepresentations that product was "green" and non-toxic, claim was subsumed by PLA because the "essence of [p]laintiffs' real claim" was failure to warn of potential

31

health issues resulting from product); *Qasim v. Spectrum Brands Holdings, Inc.*, Civil Action No. 21-18744 (JXN) (JRA), 2024 WL 4345153, at *4 (D.N.J. Sept. 30, 2024) ("Although a plaintiff can 'avoid [PLA] subsumption' by 'assert[ing] a negligence claim that arises from the independent conduct of a defendant, which is unrelated to the inherent defect in the product, itself,' Plaintiffs have not done so here." (quoting *Hindermyer*, 419 F. Supp. 3d at 823)); *cf. Copeland v. Poliquin Performance Center 2, LLC*, Case No. 3:19-cv-20278 (BRM) (ZNQ), 2021 WL 1207728 (D.N.J. Mar. 30, 2021) (CFA claims were not subsumed by PLA where athlete relied on representations that product did not contain illegal ingredient and suffered economic harm, not from the product itself but from inaccuracy of representations).

Here, Plaintiffs allege they are bringing this lawsuit to enjoin "Sig Sauer from continuing to distribute its defective P320's." FAC ¶ 25. Plaintiffs allege Sig Sauer misrepresented "the P320's propensity for unintended discharge" and that "the P320 won't fire unless you want it to." FAC ¶¶ 191, 195. These allegations are wholly dependent on Plaintiffs' PLA allegations that the P320 is defective, and "would not be actionable if [the P320] were not [defective]." *Barrett*, 518 F.Supp.3d at 824. Plaintiffs have not asserted a claim "that arises from the independent conduct of a defendant [and] is unrelated to the inherent defect in the product, itself," as is required to plead a distinct CFA claim. *Qasim*, 2024 WL 4345153, at *4. Because

Plaintiffs' CFA claims are rooted in the alleged product defect, they are subsumed by the PLA and must be dismissed.

**E. Plaintiffs' Punitive Damages Request Must Be Dismissed Because Plaintiffs Have Failed to State a Claim Entitling Them to Compensatory Damages and Because Their Allegations Are Devoid of the Requisite Supporting Facts.**

Because Plaintiffs have failed to state a viable claim entitling them to compensatory damages, Plaintiffs' request for punitive damages must be dismissed. *See Hindermyer*, 419 F. Supp. 3d at 831 ("Plaintiff is not entitled to [a punitive damages] award, without having asserted an 'independent cause of action for compensatory damages.'" (citation modified)); *Pitts v. Newark Bd. of Educ.*, 766 A.2d 1206, 1210 (Super. Ct. N.J. App. Div. 2001) (similar). As discussed above, New Jersey law prohibits public entities like Plaintiffs from recovering compensatory damages even for actionable public nuisance claims; Plaintiffs cannot recover compensatory damages for their PLA claims because they lack standing to bring them; and the CFA does not entitle the Attorney General to compensatory damages. *See Weinberg v. Sprint Corp.*, 801 A.2d 281, 289-90 (N.J. 2002) (Attorney General has power to, *e.g.*, investigate, seek injunctions and restitution orders, issue cease and desist orders, and impose penalties under CFA, whereas compensating the victim for losses was promoted by "[t]he addition of a private cause of action"); *see also Zorba Contractors, Inc. v. Hous. Auth., Newark*, 827 A.2d 313, 322 (Super. Ct.

N.J. App. Div. 2003) ("[T]he CFA authorized defrauded consumers to bring private actions primarily for individual legal relief while continuing to confer authority and responsibility upon the Attorney General to seek equitable relief . . ."). Absent any viable claim for compensatory damages, Plaintiffs' request for punitive damages must be dismissed.

Further, Plaintiffs' "pleading" is devoid of the requisite facts to support their punitive damages claim. *See Doe,* 2025 WL 1950065, at *2 (citing *Twombly,* 550 U.S. at 555). The New Jersey Legislature enacted the Punitive Damages Act "to establish more restrictive standards" to limit punitive damages to "exceptional cases." *See Pavlova v. Mint Mgmt. Corp.*, 868 A.2d 322, 325-26 (N.J. Super. Ct. App. Div. 2005) (citing N.J. Stat. Ann. § 2A:15–5.9 (citation modified)). Plaintiffs must prove by clear and convincing evidence that the harm suffered resulted from a malicious or "evil-minded act," or evinced a "wanton and willful disregard" for a "high degree of probability of harm to another or reckless indifference." *See* N.J. Stat. Ann. § 2A:15-5.10, 5.12. Furthermore, "circumstances of aggravation and outrage . . . are required, and "any degree of negligence including gross negligence" is insufficient. *Gillman v. Rakouskas*, No. CV 16-4619, 2017 WL 379433, at *3 (D.N.J. Jan. 26, 2017); *see also Pavlova*, 868 A.2d at 325.

Plaintiffs have pled no facts to meet any parts of this standard. Rather, the FAC repeats the same boilerplate allegation that merely parrots the legal standard.

34

*See, e.g.*, FAC ¶¶ 142, 153, 163, 172, 183, 207, 218 (Defendant Sig Sauer's "unlawful actions and/or omissions were undertaken with actual malice or accompanied by wanton and willful disregard of persons who foreseeably might be harmed by those actions or omissions, within the meaning of the Punitive Damages Act, N.J.S.A. 2A:15-5.12."). This is the very "formulaic recitation of the elements of a cause of action" that requires dismissal under Rule 12(b)(6). *See, e.g., Gillman*, 2017 WL 379433, at *3 (quoting *Iqbal*, 556 U.S. at 678) (dismissing punitive damages request where conclusory allegations stated defendants "consciously and intentionally operated their vehicle . . . such . . . that they knew injury to another was probable . . . with wanton and reckless disregard for the safety of others" but was "devoid of any facts" in support); *Higgins v. Route 17 Auto.,* LLC, No. CIV.A. 11-6240, 2012 WL 3284846, at *2-3 (D.N.J. Aug. 10, 2012) (dismissing allegations that defendants' acts or omissions were "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions" as impermissible "threadbare recitals of the elements of a cause of action").

### F.    Plaintiffs Fail to Allege Facts Sufficient to Meet Their Burden Under *Bruen* To Support the Constitutionality of Their Request for a Statewide Ban and Mandatory Recall of All P320 Handguns.

Plaintiffs failed to plead any facts alleging that its proposed ban and recall of a class of handguns "is consistent with this Nation's historical tradition of firearm

regulation," as required by the United States Supreme Court's decision in *Bruen*, 597 U.S. at 17. Absent any pleading to meet this standard, the State has not raised any right to relief "above the speculative level," and its prayer for such relief must be dismissed. *See Doe*, 2025 WL 1950065, at *2 (quoting *Twombly*, 550 U.S. at 555).

The State seeks to ban and recall a class of handguns by (1) enjoining Sig Sauer from selling P320 handguns for commercial distribution in New Jersey to civilians and local law enforcement, and (2) compelling a mandatory recall that would seize thousands of P320 handguns lawfully owned by New Jersey residents. But the Supreme Court has made clear that any such action would raise significant Second Amendment concerns. *See Bruen*, 597 U.S. at 22 ("[T]he Second Amendment [does] not countenance a 'complete prohibition' on the use of [handguns:] 'the most popular weapon chosen by Americans for self-defense in the home.'" (quoting *Heller*, 554 U.S. at 629)); *see also Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421, 446 (D.N.J. 2024) ("It is no answer to say . . . that it is permissible to ban the possession of [a weapon] so long as the possession of other firearms . . . is allowed . . . . Thus, in this Court's understanding of Supreme Court precedent, a categorical ban on a class of weapons commonly used for self-defense is unlawful." (alteration in original) (quoting *Heller*, 554 U.S. at 629)).

This Second Amendment guarantee against such government action extends to the right to manufacture and purchase firearms. *See Rigby v. Jennings*, 630 F. Supp 3d 602, 615 (D. Del. 2022) ("[T]he right to keep and bear arms implies a corresponding right to manufacture arms. Indeed, the right to keep and bear arms would be meaningless if no individual or entity could manufacture a firearm."); *Reese v. ATF*, 127 F.4th 583, 590 (5th Cir. 2025) ("[C]onstitutional rights impliedly protect corollary acts necessary to their exercise" (quoting *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring)), and holding "the right to 'keep and bear arms' surely implies the right to purchase them" (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)).

Under *Bruen*, when the government seeks to impose a remedy that would so regulate the exercise of Second Amendment rights, the government "may not simply posit that the regulation promotes an important interest." *Bruen*, 597 U.S. at 17. Rather, "the government must demonstrate that [its] regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)). "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*; *see also Ass'n of N.J. Rifle & Pistol Clubs*, 742 F. Supp. 3d at 439 (the *Bruen* standard "requires courts to assess whether [modern] firearms regulations

37

are consistent with the Second Amendment's text and historical understanding" (quoting *Bruen*, 597 U.S. at 26)); *Boland v. Bonta*, 662 F. Supp. 3d 1077, 1086-87 (C.D. Cal. 2023) (similar).

Plaintiffs have alleged no facts in their FAC that would allow them to meet this burden. Plaintiffs rest their request for a P320 handgun ban on the fact that a handful of consumers have pursued product liability claims after accidental discharges of their P320s. But accidental discharges occur with firearms made by all gun manufacturers and are not unique to the P320—they "occur across firearm types, trigger actions, and trigger weights."[26] This was particularly true during the key historical time periods identified in *Bruen*, as early firearms were "notoriously perilous to the shooter on account of having so much explosive gunpowder," increasing their likelihood to "explode . . . like a . . . grenade in the shooter's hands" and "liab[ility] to misfire."[27]

Nor do Plaintiffs provide any factual allegation that the existence of accidental discharges has ever resulted in a ban of a firearm. To the contrary, the State's attempt

---

[26] John O'Neill et al., *Further Analysis of the Unintended Discharge of Firearms in Law Enforcement*, 68 Applied Ergonomics 267, 271 (2018).

[27] Brian DeLay, *The Myth of Continuity in American Gun Culture*, 113 Calif. L. Rev. 1, 23 (2025)*; see also* Clayton E. Cramer & Joseph Edward Olson, *Pistols, Crime, and Public Safety in Early America*, 44 Williamette L. Rev. 699, 705 (2008) (noting 1700s ordinances prohibited leaving loaded firearms unattended given their susceptibility to explode and "accidental[ly] discharge").

to premise its P320 handgun ban on a handful of product liability allegations would

open the door to bans on all manner of firearms, based upon similar product defect

allegations.[28] The Supreme Court expressly rejected such State action. *See Bruen*,

597 U.S. at 47 ("Whatever the likelihood that handguns were considered 'dangerous

and unusual' during the colonial period, they are indisputably in 'common use' for

self-defense today. They are, in fact, 'the quintessential self-defense weapon.'"

(quoting *Heller*, 554 U.S. at 629)).

Plaintiffs' requested P320 handgun ban runs even further afoul of the

Constitution because it would sweep in handguns that even Plaintiffs acknowledge

are safe. As discussed above, Plaintiffs contend that the P320 is defective because it

does not come equipped "with a manual thumb safety that, when engaged, prevents

trigger movement." FAC ¶ 48. But Plaintiffs' Prayer for Relief seeks to ban all P320

handguns sold commercially and to local law enforcement within the state, even

those that *are* equipped with a thumb safety. Indeed, Plaintiffs' proposed ban would

---

[28] *See*, *e.g.*, *Seguin v. Remington Arms Co.*, 31 F.4th 311 (5th Cir. 2022) (design defect claim involving Remington bolt-action rifle), *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448 (6th Cir. 2013) (design defect claim involving muzzleloading rifle); *Tosseth v. Remington Arms Co.*, 483 F. Supp. 3d 659 (D.N.D. 2020) (same involving a Beretta pistol); *Bedwell v. Braztech Int'l, L.C.*, No. 17-CIV-22335, 2018 WL 830073 (S.D. Fla. Feb. 9, 2018) (same involving Rossi-brand magnum revolver); *Kehagias v. Glock, Inc.*, No. 1:11CV1133, 2013 WL 3783744 (M.D.N.C. July 18, 2013) (same involving Glock handgun); *Keene v. Sturm, Ruger & Co.*, 121 F. Supp. 2d 1063 (E.D. Tex. 2000) (same involving Ruger single-action revolver).

include the exact M17 and M18 models of the P320 relied upon by servicemen and women in all branches of the U.S. military in the defense of our country.

Absent any pleading to meet its burden under *Bruen*, the State has failed to state a claim entitling it to its requested remedy and its claims must be dismissed. *See Doe*, 2025 WL 1950065, at \*2 (citing *Twombly*, 550 U.S. at 555).

## VI.    **CONCLUSION**

Because Plaintiffs fail to state any claim that is cognizable under New Jersey law; fail to plead any non-speculative facts in support; and seek a ban within the state of a class of handguns in contravention of the Second Amendment, their First Amended Complaint should be dismissed in full.

Dated: January 23, 2026            Respectfully submitted,

                                    */s/ Stephen J. DeFeo*
                                    Stephen J. DeFeo (ID No. 032071985)
                                    **Brown & Connery, LLP**
                                    360 North Haddon Avenue
                                    Westmont, NJ 08108
                                    P: (856) 858-8169
                                    F: (856) 858-4967
                                    sdefeo@brownconnery.com

Eric G. Lasker (*Pro Hac Vice Forthcoming*)
Robert E. Johnston (*Pro Hac Vice Forthcoming*)
Brett F. Clements (ID No. 068702013)
**Hollingsworth**LLP
1350 I Street NW
Washington, DC 20005
P: (202) 898-5800
F: (202) 682-1639
elasker@hollingsworthllp.com
rjohnston@hollingsworthllp.com
bclements@hollingsworthllp.com

*Attorneys for Defendant*
*Sig Sauer Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 23, 2026, a copy of the foregoing was filed with the

Court and served on all counsel of record through the Court's CM/ECF system.

**Brown & Connery, LLP**

/s/ *Stephen J. DeFeo*
Stephen J. DeFeo (ID No. 032071985)

*Attorneys for Defendant*
*Sig Sauer Inc.*